UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY A. DENNO,

                        Plaintiff,

v.                                                      1:16-CV-1411
                                                        (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF STEPHEN J. MASTAITIS, Jr.        Stephen J. Mastaitis, Esq.
  Counsel for Plaintiff
1412 Route 9P
Saratoga Springs, NY 12866

U.S. SOCIAL SECURITY ADMIN.                 Susan J. Reiss, Esq.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 15.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Anthony A.

Denno ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 9, 13.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1967.  (T. 50.)  He completed high school.  (T. 150.) Generally, Plaintiff's alleged disability consists of post-traumatic stress disorder ("PTSD"), history of alcohol abuse, hypertension, and claustrophobia.  (T. 149.)  His alleged disability onset date is August 1, 2006.  (T. 50.)  His date last insured is December 31, 2010.  (*Id.*)  He previously worked as a cab driver and factory worker.  (T. 150.)

### B.    Procedural History

On January 23, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 57.)  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On November 14, 2014, Plaintiff appeared *pro se* before the ALJ, Arthur Patane.  (T. 31-49.)  On January 1, 2015, ALJ Patane issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 14-30.)  On September 28, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 19-26.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2010 and Plaintiff had not engaged in substantial gainful activity since August 1, 2006. (T. 19.) Second, the ALJ found that prior to his date last insured Plaintiff did not have a medically determinable impairment; however, beginning in 2012 Plaintiff had the severe impairment of PTSD. (T. 19-20.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 21.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but he was limited to frequent interaction with co-workers and supervisors and occasional interaction with the general public. (T. 23.) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 25-26.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes essentially seven separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in affording a portion of the opinion of consultative examiner, Alan Dubro, Ph.D., significant weight while rejecting other portions of his opinion. (Dkt. No. 9 at 10-11 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence. (*Id.* at 11-12, 16.) Third, Plaintiff argues the ALJ erred in his credibility determination. (*Id.* at 12, 14.) Fourth, Plaintiff argues the ALJ should have requested

vocational expert ("VE") testimony at step five.  (*Id.* at 11, 17.)  Fifth, Plaintiff argues he

was prejudiced by lack of representation.  (*Id.* at 18-19.)  Sixth, Plaintiff argues his

mental impairment met or equaled a Listing.  (*Id.* at 19-22.)  Seventh, and lastly, Plaintiff

argues the AC failed to remand based upon new evidence.  (*Id.* at 22-23.)

**B.    Defendant's Arguments**

In response, Defendant makes four arguments.  First, Defendant argues the

ALJ's step three finding was supported by substantial evidence.  (Dkt. No. 13 at 5-12

[Def.'s Mem. of Law].)  Second, Defendant argues the ALJ's RFC determination was

supported by substantial evidence.  (*Id.* at 12-17.)  Third, Defendant argues the

Commissioner properly met her burden at step five.  (*Id.* at 17-19.)  Fourth, and lastly,

Defendant argues Plaintiff was not prejudiced by lack of counsel at his hearing.  (*Id.* at

19-22.)

**III.    RELEVANT LEGAL STANDARD**

**A.    Standard of Review**

A court reviewing a denial of disability benefits may not determine de novo

whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.

Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether

the ALJ applied correct legal principles, application of the substantial evidence standard

to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R.

§§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this

sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct.

2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual
> functional capacity' assessment, whether the claimant can perform any of
> his or her past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

For ease of analysis Plaintiff's arguments will be addressed out of order and in a

consolidated manner.

### A.  Lack of Counsel at Hearing

"Claimants have a statutory right to notification of their options for obtaining legal

representation in [Social Security disability] claims."  *Grant v. Astrue*, No. 5:05-CV-1138,

2008 WL 2986393, at *4 (N.D.N.Y. July 31, 2008) (citing 42 U.S.C. §§ 406(c),

1383(d)(2)(B)).  "At the hearing itself, 'the ALJ must ensure that the [plaintiff] is aware of

[her] right [to counsel].' "  *Sindoni v. Colvin*, No. 3:14-CV-0633, 2015 WL 3901955, at *4

(N.D.N.Y. June 25, 2015) (quoting *Robinson v. Sec'y of Health and Human Servs.*, 733

F.2d 255, 257 (2d Cir. 1984)).  Notably, "[t]he Second Circuit rejected the 'enhanced

disclosure requirements' established in some circuits."  *Sindoni*, 2015 WL 3901955, at

*4 (citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508 (2d Cir. 2009)).  "Even if an

ALJ does not sufficiently inform a plaintiff of his/her rights, the lack of counsel, in and of

itself, is not a sufficient ground upon which remand or reversal may be based." *Grant*, 2008 WL 2986393, at *5 (citing *Alvarez v. Bowen*, 704 F.Supp. 49, 53 (S.D.N.Y. 1989)). Rather, "Plaintiff must show prejudice or unfairness in the proceeding." *Grant*, 2008 WL 2986393, at *5 (citing *Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 142 (1st Cir. 1987)).  Additionally, "[t]he Commissioner of Social Security is not obligated to provide a claimant with counsel," though where a plaintiff proceeds *pro se*, "the ALJ has a duty 'to scrupulously and conscientiously probe into, inquire of, and explore all relevant facts.' " *Lamay*, 562 F.3d at 509 (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980)).

Prior to the hearing Plaintiff was informed that he could seek representation.  (T, 72-73, 84, 94.)  At the hearing the ALJ informed Plaintiff that he could adjourn the hearing to allow Plaintiff time to find representation.  (T. 33-34.)  During the hearing the ALJ also explained how an attorney received payment in a social security case.  (T. 33-35.)  Plaintiff informed the ALJ that he sought representation through Legal Aid, but was informed that they would not take his case and he was encouraged to attend the hearing.  (T. 34.)

Plaintiff argues that he was prejudiced by lack of representation because the ALJ did not ask questions "concerning the source" of Plaintiff's PTSD or inquire "whatsoever" into Plaintiff's limitations and/or symptoms.  (Dkt. No. 9 at 18 [Pl.'s Mem. of Law].)  Here, Plaintiff was not prejudiced due to lack of representation.

During the hearing the ALJ specifically asked Plaintiff why he felt he could not work.  (T. 40.)  Plaintiff testified that he had a "low threshold of trust" and was uncomfortable around "numbers of people."  (*Id.*)  Plaintiff's mother testified that Plaintiff

could not "be around a number of people, his socialization is very limited," has difficulty sleeping, and jumps at "any little noise." (T. 44.) Plaintiff's testimony, and his mother's testimony, provided a summary of his incarceration, which was the source of his PTSD. (T. 44-45.)

In addition to Plaintiff's testimony, the medical record contained evidence from all sources that Plaintiff identified as treatment providers. (T. 152-154.) Mental health treatment records, as discussed further herein, contained objective observations and notations of Plaintiff's symptoms and "source" of his PTSD. The Commissioner also obtained a consultative psychological evaluation (T. 298-302) and physical examination (T. 303-306).

Therefore, Plaintiff was not prejudiced by lack of counsel. Prior to, and at the hearing, Plaintiff was advised of his right to representation. Plaintiff voluntarily and knowingly waived his right. The ALJ inquired into Plaintiff's work history, living situation, daily activities, treatment providers, and treatment. (T. 35-42.) Therefore, it is recommended that the ALJ met his duty to inquire in the case and Plaintiff was not prejudiced by lack of counsel.

### B. The ALJ's Step Three Determination

If an ALJ determines that a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii)(d), 416.920(a)(4)(iii)(d). The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity. *Id.* at §§ 404.1520(a), 416.925(a). If a plaintiff's impairment, or combination of impairments,

matches one listed in Appendix 1, and satisfies the duration requirement in 20 C.F.R. 416.909, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience.  *Id.* at §§ 404.1520(d), 416.920(d).

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a listing.  *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.*  An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. §§ 404.1526(a), 416.926(a).  Although an ALJ may award benefits at step three, a plaintiff who fails to prove her impairment matches or equals one listed in Appendix 1 is not denied benefits, but rather, the ALJ must proceed to step four.  *See id.* at §§ 404.1520(e), 416.920(e).

At step three, the ALJ determined that Plaintiff's impairment did not meet or equal a Listing, specifically Listings §§ 12.06 and 12.08.  (T. 21-23.)  Plaintiff asserts the ALJ erred at step three because the ALJ failed to consider Listing § 12.04 and further, he meets or equals Listings §§ 12.06 and 12.08.  (Dkt. No. 9 at 19-22 [Pl.'s Mem. of Law].)

To satisfy the criteria of Listings §§ 12.04, 12.06, or 12.08 Plaintiff must meet the requirements of paragraph A and either paragraph B or paragraph C of the Listing. Paragraph B of each of these Listings requires that Plaintiff demonstrate that his mental impairment resulted in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties maintaining social functioning; (3) marked difficulties

in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Secs. 12.04(B), 12.06(B), 12.08(B).

Or, in the alternative, paragraph C of Listing § 12.04 requires a chronic affective disorder of at least 2 years duration, with at least one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that resulted in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living environment.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.04(C).  Paragraph C of Listing § 12.06 requires an anxiety-related disorder "[r]esulting in complete inability to function independently outside the area of one's home."  *Id.* at Sec. 12.06(C).  Listing 12.08 has no paragraph C.  *Id.* at Sec. 12.08.

Plaintiff first asserts, without citation to the record, that he has "at least" four of the paragraph B "symptoms" outlined in Listing § 12.04.  (Dkt. No. 9 at 19-20 [Pl.'s Mem. of Law].)  Paragraph A of Listing § 12.04 provides symptoms of the disorder for that particular Listing, whereas paragraph B outlines areas of mental functioning.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.04(A)-(B).  Because the ALJ discussed the specific criteria of paragraphs B and C of the various Listings, any error to specifically discuss paragraph A symptoms is harmless.  Plaintiff's impairment must satisfy the criteria of paragraph A *and* paragraph B and/or C.  Even if Plaintiff's impairment met the criteria of paragraph A, the ALJ nonetheless determined the impairment did not meet or equal the paragraph B and/or C criteria.

Second, Plaintiff asserts, again without citation to the record, his PTSD impairment meets or equals the paragraph C criteria of Listing § 12.04.  (Dkt. No. 9 at 20 [Pl.'s Mem. of Law].)  As stated by the ALJ, the evidence failed to establish the presence of paragraph C criteria because Plaintiff's impairment did not cause a complete inability to function independently outside of his home.  (T. 22.)

Third, Plaintiff asserts he has marked restrictions in activities of daily living and social functioning.  (Dkt. No. 9 at 21-22 [Pl.'s Mem. of Law].)  The ALJ determined, at step three, that Plaintiff had no restrictions in his activities of daily living.  (T. 22.)  The ALJ noted Plaintiff was able to live in a shelter after being released from prison, he was able to maintain his hygiene, and prepare meals.  (*Id.*)  The ALJ further noted Plaintiff reported he cleaned his room, used public transportation, visited family and friends, and went to work experience six days per week.  (*Id.*)

Indeed, Plaintiff indicated in an assessment of adult daily living skills form that he had no problem cooking, paying bills, keeping his living space clean, taking his medication, using a washer and dryer, and taking care of personal hygiene.  (T. 257.)  He reported some difficulty in taking public transportation.  (*Id.*)  He reported he enjoyed hunting, fishing, camping, hiking, and outdoor activities.  (*Id.*)  He explained that he no longer participated in activities because "parole [does not] allow it."  (T. 163.)  He reported his strengths as being a good listener, sociable, honest and respectful.  (T. 257.)

The ALJ determined Plaintiff had "moderate difficulties" in social functioning.  (T. 22.)  The ALJ acknowledged Plaintiff testified that he did not trust people and was uncomfortable in groups more than three to four people.  (*Id.*)  However, the ALJ noted

that Plaintiff presented in an adequate manner during medical examinations and was described as cooperative.  (*Id.*)  Indeed, on examinations Plaintiff was cooperative.  (T. 299, 374.)  Plaintiff reported he had a small circle of friends.  (T. 369.)  The record contained notations that Plaintiff worked at a golf course as a condition of his parole. (T. 267.)

The "B" criteria of Listing § 12.04 are identical to the "B" criteria of Listings §§ 12.06 and 12.08.  Therefore, even though the ALJ did not explicitly discuss Listing § 12.04, he thoroughly explained why Plaintiff's impairment did not meet the "B" criteria. Because the ALJ properly concluded Plaintiff's impairment did not meet B criteria of Listing §§ 12.06 and 12.08, it goes to reason Plaintiff would not meet the identical B criteria of Listing § 12.04.  Further, substantial evidence in the record supported the ALJ's determination that Plaintiff had no restriction in his activities of daily living and moderate restrictions in social functioning.  Therefore, it is recommended that the ALJ's step three determination be upheld because substantial evidence supported the determination.

**C.  The ALJ's Assessment of Consultative Examiner, Alan Dubro, Ph.D.**

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6)[1].

---

[1]    Effective March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927 have been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

On April 22, 2013, Dr. Dubro performed a consultative psychiatric examination of Plaintiff and provided a medical source statement.  (T. 298-302.)  Plaintiff informed Dr. Dubro the source of his PTSD stemmed from his "wrongful" conviction and during incarceration he experienced "unwarranted beatings."  (T. 298.)  Plaintiff further informed Dr. Dubro that he was easily startled.  (T. 299.)

On examination Plaintiff was cooperative and presented in an adequate manner. (T. 299.)  Dr. Dubro noted Plaintiff established eye contact, but did not consistently maintain it.  (*Id.*)  He observed Plaintiff's speech was fluent and clear; his thought process was coherent and goal directed; his affect was anxious; his mood was constricted; his attention and concentration were impaired secondary to distractibility associated with anxiety; he was able to perform mental arithmetic; his recent and remote memory skills were impaired secondary to distractibility associated with anxiety; his cognitive functioning was estimated to fall in the low average range; and his insight and judgment were fair.  (T. 299-300.)

In a medical source statement, Dr. Dubro opined Plaintiff: could understand directions and instructions; had mild difficulty in his ability to attend, remember, and follow directions and instructions; had mildly impaired attention span and concentration; appeared to experience mild difficulty in learning new tasks; had moderate difficulty in his ability to perform complex tasks independently and on a regular basis; had marked difficulty in his ability to interact with others; displayed some difficulty in making day-to-day decisions; and would experience moderate difficulty in his ability to regularly attend to a routine and maintain a schedule.  (T. 301.)

The ALJ afforded Dr. Dubro's opinion "significant weight"; however, the ALJ stated Dr. Dubro's opinion that Plaintiff had moderate difficulty in his ability to perform complex tasks independently and on a regular basis and marked difficulty in his ability to interact with others was not supported by his examination or the medical evidence. (T. 24-25.)  Plaintiff argues the ALJ erred by failing to fully credit Dr. Dubro's opinion that Plaintiff had marked limitations in his ability to interact with others and instead substituted his own opinion.  (Dkt.  No. 9 at 10-11 [Pl.'s Mem. of Law].)

As an initial matter, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).  Therefore, the ALJ did not commit *per se* legal error because he did not adopt the entirety of Dr. Dubro's opinion.

The ALJ's determination to not adopt Dr. Dubro's opinion that Plaintiff had marked limitations in social functioning was supported by substantial evidence in the record.  The ALJ properly concluded Dr. Dubro's limitation was inconsistent with his findings on examination that although Plaintiff didn't consistently maintain eye contact, he was able to establish eye contact and Plaintiff's thought process was coherent and goal direction.  (T. 299.)  The ALJ also properly concluded Dr. Dubro's social limitation was inconsistent with other evidence in the record.  (T. 22.)  Namely, Dr. Renderer

described Plaintiff as polite and noted his affect was appropriate.  (T. 243.)  Elsewhere a mental health provider described Plaintiff's behavior as "normal or pleasant."  (T. 369.) Plaintiff reported that he attended programs as a condition of his parole, some of which include working at a golf course.  (T. 243, 267.)  Plaintiff attended group therapy sessions and was described as "very active" in session.  (T. 267.)  Therefore, the ALJ's determination to not adopt Dr. Dubro's opinion that Plaintiff had marked limitations in social functioning was supported by substantial evidence in the record and it is recommended that the ALJ's weight determination be upheld.

### D.  The ALJ's RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

In formulating his RFC determination, the ALJ relied on Dr. Dubro's opinion, non-examining State agency medical examiners Dr. Alpert's opinion, Plaintiff's daily activities, Plaintiff's lack of treatment, and findings on examinations.  (T. 25.)

Plaintiff argues the ALJ erred in his RFC determination because he: 1) failed to consider Plaintiff's non-exertional impairment of fatigue, 2) failed to consider Plaintiff's need to take unscheduled breaks, 3) failed to consider the combined effects of Plaintiff's impairments, and 4) failed to perform a function-by-function assessment.  (Dkt. No. 9 at 11-12, 13-14, 15, 16, 17 [Pl.'s Mem. of Law].)  For the reasons stated herein, and further outlined in Defendant's brief, the ALJ's RFC determination was proper and supported by substantial evidence in the record.  Therefore, it is recommended that the ALJ's RFC determination be upheld.

As an initial matter, the Second Circuit has held that the failure to explicitly

engage in a function-by-function analysis as part of the RFC assessment does not

constitute a *per se* error requiring remand. *See Chichocki v. Astrue,* 729 F.3d 172, 174

(2d Cir.2013).

In formulating his RFC determination the ALJ took into consideration Plaintiff's

symptoms, the combined effects of Plaintiff's impairments, and additional medical

evidence in the record.

At step two the ALJ determined that Plaintiff's hypertension was non-severe.  (T.

21.)  The ALJ noted Plaintiff was on medication to treat his hypertension and this

condition was "stable" in November 2012.  (*Id.*)  The ALJ further noted Plaintiff received

emergency care in 2013 for chest pain and left arm pain, and noted a transthoracic

echocardiography and stress test were normal.  (*Id.*)  The record showed that Plaintiff's

blood pressure was consistently within normal range.  (T. 225, 235, 241, 315, 303, 304,

319.)  The ALJ also thoroughly summarized the medical examination and opinion of

consultative examiner, Nader Wassef, M.D.  (T. 21.)  Dr. Wassef's examination of

Plaintiff was completely normal.  (T. 304-306.)

Plaintiff reported in July of 2012 that he was in "good physical condition and [had]

no other medical issues."  (T. 252.)  Plaintiff reported on November 7, 2012, that despite

being under "some stress" he felt "well" and had "no concerns."  (T. 240.)  In addition,

Plaintiff denied fatigue.  (T. 235, 241, 315, 318.)  Plaintiff informed a provider that he felt

unemployable because of his sex offender status.  (T. 374.)

Plaintiff's assertion that he must be able to take extended unscheduled breaks is

without merit.  (Dkt. No. 9 at 13 [Pl.'s Mem. of Law].  Plaintiff does not provide citation to

the record to support his contention.  It is not the job of a court to "comb the record" for evidence that supports Plaintiff's assertions.  *Johnson v. Colvin*, No. 13-CV-6319, 2014 WL 1394365, at *6 (W.D.N.Y. Apr. 9, 2014.)  However, a review of the record failed to find any opinion, or statement, to support this assertion.

The ALJ's RFC determination was supported by substantial evidence.  The ALJ properly concluded that Plaintiff's hypertension was non-severe and substantial evidence in the record supported the ALJ's RFC determination that Plaintiff could perform work at all exertional levels.  The ALJ properly afforded the majority of Dr. Dubro's opinion significant weight and relied on that opinion in formulating his mental RFC determination.  The RFC determination that Plaintiff could have frequent interaction with co-workers and supervisors and occasional interaction with the general public, was supported by the evidence as outlined herein.  Namely, mental health treatment notations did not support limitations greater than those found by the ALJ.  (T. 243, 338, 368-369.)  Plaintiff's activities, such as his ability to work 38 hours a week at a golf course as a condition of his parole, further supported the ALJ's determination. Plaintiff also denied any problems getting along with bosses, teachers, police, landlords or other people in authority.  (T. 166.)  Therefore, it is recommended that the ALJ's RFC determination be upheld.

**E.  The ALJ's Credibility Determination**

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)).  However, the ALJ "is not required to accept [a plaintiff's]

subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979)).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief."  *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms.  *See* 20 C.F.R. §§ 404.1529, 416.929.  First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* at §§ 404.1529(a), 416.929(a).  Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work.  *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

18

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible.  (T. 24.)  The ALJ's thoroughly outlined Plaintiff's testimony, treatment history, treatment notes, and medical reports.  (T. 23-25.)

The ALJ noted Plaintiff's statements about his symptoms of anxiousness, flashbacks, being easily started, decreased trust, nervousness in crowds, and lack of socialization.  (T. 20, 24.)  He determined that the medical evidence did not support Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms.  As outlined herein, objective medical evidence and Plaintiff's statements did not support his allegations.  For example, objective mental status examinations indicated Plaintiff was cooperative, he reported he visited family and friends, he took public transportation, and he was able to work 38 hours a week at a golf course.  The ALJ properly noted these inconsistencies in determining that Plaintiff was not fully credible.  *See Cichocki,* 729 F.3d at 178 (ALJ properly relied on plaintiff's activities of daily living); *see Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (ALJ correctly noted that plaintiff's activities were inconsistent with allegations of limitations).

The ALJ further considered Plaintiff's treatment history.  (T. 22.)  The ALJ noted that Plaintiff did not take medication for anxiety and did not receive consistent treatment with a mental health provider.  (T. 22, 25, 298, 303, 316, 319, 356.)  Plaintiff informed providers that he was not interesting in taking medication for anxiety.  (T. 316, 319, 325, 356, 366.)  Other notations indicated Plaintiff stated he never received mental health counseling and he was never admitted to a psychiatric hospital.  (T. 298, 332.)

Overall, the ALJ properly evaluated Plaintiff's credibility.  The ALJ noted inconsistencies between Plaintiff's statement of limitations and the objective medical evidence and Plaintiff's activities.  Therefore, it is recommended that the ALJ's credibility determination be upheld.

### F.  The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"); *see Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (quoting *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)).  A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala*, 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis." *Bapp* 802 F.2d at 605-606.  Further, "the mere existence of a non-exertional impairment does

not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

Plaintiff argues that the ALJ erred in failing to obtain VE testimony to assess his ability to perform work in the national economy given his nonexertional limitations. (Dkt. No. 9 at 11-12, 17-18 [Pl.'s Mem. of Law].) Contrary to Plaintiff's assertion, the ALJ properly relied on the Grids as a framework for decision making, without consulting a VE, to satisfy his burden to show that there exists work in the national economy that Plaintiff could perform.

As outlined above, the ALJ's RFC determination was proper and supported by substantial evidence. The ALJ's RFC determination that Plaintiff could have frequent interaction with co-workers and supervisors and occasional interaction with the general public has little or no effect on the occupational base for unskilled work. SSR 85-15 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) ... to respond appropriately to supervision, coworkers, and usual work situations .... A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base."); *see Frank v. Colvin*, No. 14-CV-00858 (WGY), 2016 WL 915250, at *3 (N.D.N.Y. Mar. 4, 2016) (ALJ properly relied on Grids where plaintiff had an RFC for work at all exertional levels and must "avoid work requiring more complex interaction or joint efforts with other coworkers to achieve work goals, and he should have no more than occasional, brief interaction with the public"); *see Jones v. Colvin*, No. 11-CV-445 (MAT), 2014 WL 1976921, at *12 (W.D.N.Y. May 15, 2014) (ALJ properly relied on the Grids where plaintiff had an RFC for unskilled work at all exertional levels with "little to no interaction

with the public").  Therefore, it was appropriate for the ALJ to rely on the Grids because he properly determined that Plaintiff's nonexertional impairments did not significantly diminish the occupational base; therefore, it is recommended that the ALJ's step five determination be upheld.

### G.  New Evidence to the AC

"[N]ew evidence submitted to the [AC] following the ALJ's decision becomes part of the administrative record for judicial review when the [AC] denies review of the ALJ's decision."  *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir.1996).  "The only limitations stated in [20 C.F.R. § 416.1470(b) ] are that the evidence must be new and material and that it must relate to the period on or before the ALJ's decision."  *Perez*, 77 F.3d at 45.

Once evidence is added to the record, the AC must then consider the entire record, including the new evidence, and review a case if the "administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. §§ 404.970(b), 416.1570(b).  If the AC denies review of a case, the ALJ's decision, and not the AC's decision, is the final agency decision.  *See Perez*, 77 F.3d at 44.  When the AC denies review in a case, the review focuses on the ALJ's decision.  *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015); *see* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner ..., may obtain a review of such decision by a civil action...." (emphasis added)).

A district court's review is based on the entire administrative record, including any new evidence submitted to the AC following the ALJ's decision.  *See Perez*, 77 F.3d at 45.  Thus, as in this case, when the AC denies review after considering new evidence, the court "simply review[s] the entire administrative record, which includes the

new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Id.* at 46; *Lesterhuis*, 805 F.3d 87.

Plaintiff argues that the AC erred in failing to remand the matter to the ALJ based on new evidence.  (Dkt. No. 11 at 20-21 [Pl.'s Mem. of Law].)  Plaintiff asserts the AC erred because they "refused to recognize" or discuss the new evidence in "any meaningful way."  (*Id.* at 20.)

The Second Circuit in *Lesterhuis* clearly stated that when new evidence is submitted to the AC and the AC denies review, the reviewing court's role is to review the entire administrative record, including the new evidence, and determine whether substantial evidence supported the Commissioner's final decision.  *Lesterhuis*, 805 F.3d 87.  Therefore, this Court will review the ALJ's determination, not the AC's determination, in light of the new evidence as directed by *Lesterhuis*.  *See Pelow v. Colvin*, No. 6:14-CV-06529, 2015 WL 8516555, at *3 (W.D.N.Y. Dec. 11, 2015) ("This Court must thus determine whether substantial evidence supports the ALJ's decision, when the new evidence from [plaintiff] is included in the administrative record.); *Ryder v. Colvin*, No. 1:15-CV-00241, 2015 WL 9077628, at *4 (W.D.N.Y. Dec. 16, 2015) ("This Court must thus determine whether substantial evidence supports the ALJ's decision, when the new evidence is included in the administrative record.  Because the ALJ's decision was the final agency decision, the Court will not address plaintiff's arguments regarding the Appeals Council's alleged errors in considering the new evidence.").

The Second Circuit has held that the AC did not err in refusing review based on new evidence because the new evidence did not alter the weight of the evidence so dramatically as to require the AC to take the case. *Bushey v. Colvin*, 552 F. App'x. 97,

98 (2d Cir. Jan. 29, 2014) ("We do not believe that the Appeals Council erred by refusing to review the ALJ's decision in light of the new evidence that Bushey submitted to that body. The Appeals Council had substantial evidence supporting its decision to decline review, as the new evidence that Bushey presented did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case.").

Accordingly, the issue before the Court is whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the AC to take the case. This Court finds that it did not and recommends that the ALJ's determination be upheld.

As an initial matter, Plaintiff submitted to the AC medical evidence dated May 22, 2015 through July 6, 2015. (T. 376-395.) The AC determined that this new information was about a later time and therefore did not affect the decision that Plaintiff was disabled on or before the date of the ALJ's determination, January 5, 2015. (T. 2.)

Patricia Henel, Ph.D., first treated Plaintiff on May 22, 2015, five months after the ALJ's determination. (T. 377.) Dr. Henel met with Plaintiff four times and her treatment notations contained a checklist of "treatment goals" and "treatment interventions," but did not contain objective medical observations. (T. 379-381.) On July 6, 2015, Dr. Henel completed a "Psychiatric Review Technique" form. (T. 382-395.) Dr. Henel essentially checked the boxes on the form to indicate that Plaintiff's mental impairments met the severity of Listings §§ 12.04, 12.06, and 12.08. (*Id.*)

Here, the new evidence submitted would not have altered the ALJ's determination. First, as noted by Defendant, Dr. Henel's opinion that Plaintiff met a Listing was not binding on the ALJ. (Dkt. No. 13 at 10 [Def.'s Mem. of Law].) The

determination of whether or not Plaintiff has an impairment or combination of impairments that meets or equals a Listing is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Second, although the evidence contained mental health treatment notes for Plaintiff's PTSD, they related to a time period after the ALJ determination. Third, the actual treatment notations did not provide any insight into Plaintiff's impairments and do not provide any functional limitations. As outlined herein, the ALJ's mental RFC determination was supported by the medical evidence in the record before him as well as Plaintiff's activities. Therefore, it is recommended that the ALJ's determination be upheld because the evidence submitted to the AC would not have altered his opinion.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:    October 6, 2017

William B. Mitchell Carter
U.S. Magistrate Judge